UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARRY J. BECKER, | CASE NO. 1:10CV493 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Barry J Becker ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice:

## I. PROCEDURAL AND FACTUAL HISTORY

On June 23, 2006, Plaintiff filed an application for DIB and SSI, alleging disability beginning October 21, 2005. ECF Dkt. #11-5 at 140-54.[1] The SSA denied Plaintiff's application initially, ECF Dkt. #11-4 at 107-112, and on reconsideration. *Id.* at 114-119.

On March 6, 2007, Plaintiff filed a request for an administrative hearing. ECF Dkt. #11-4 at 120. On March 11, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. ECF Dkt. #11-2 at 52-83. At the hearing, the ALJ heard testimony from Plaintiff and Gene Burkhammer, a vocational expert ("VE"). *Id.* On April 18, 2008, the ALJ issued a Decision ("Decision") denying benefits. ECF Dkt. #11-3 at 89-105. Plaintiff filed a request for review, ECF Dkt. #11-2 at 50-51, which the Appeals Council denied. *Id.* at 43-48.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

On March 8, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 16, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #12. On October 4, 2010, Defendant filed a brief on the merits. ECF Dkt. #15. On October 18, 2010, Plaintiff filed a reply brief. ECF Dkt. #16.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and an arthritic right hand, which qualified as severe impairments under 20 C.F.R. §416.920(c). ECF Dkt. #11-3 at 94. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 95. Although the ALJ found that Plaintiff is unable to perform past work as a heavy equipment mechanic, a tire changer, a laborer, and a welder, *Id.* at 99, he ultimately determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined by 20 C.F.R. 404.1567(a) and 416.967(a). *Id.* Based upon Plaintiff's RFC, his age, education, and work experience, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB or SSI. *Id.* at 99-100.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§

-2-

> 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

In his first argument, Plaintiff contends that, although the ALJ characterized Plaintiff's arthritic right hand as a severe impairment, he disregarded the treating physician's opinion that Plaintiff was unable to perform fine manipulation in determining his RFC. In his second argument, Plaintiff asserts that the ALJ failed to consider the treating physician's opinion regarding Plaintiff's

-3-

spinal problems in determining his RFC. In his final argument, Plaintiff's challenges the ALJ's credibility determination.

The ALJ concluded that Plaintiff is capable of performing the full range of sedentary work. Sedentary work is defined as follows:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p.

Plaintiff's first two arguments are predicated upon the ALJ's alleged failure to give deference to the opinion of Plaintiff's treating physician, Mark Pluskota, D.O. An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's

conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Commissioner of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id.* at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id.*

The ALJ specifically addressed three of Dr. Pluskota's reports in the Decision. Dr. Pluskota diagnosed Plaintiff with polyathralgia on January 26, 2006. ECF Dkt. #11-7, p. 255. On that date, Plaintiff complained of swelling hands, painful joints, and frequent stiffness in his joints. *Id.* at p.

223.[2] In response to an inquiry by the SSA in July of 2006, Dr. Pluskota described Plaintiff's limitations as follows, " Pt cannot do fine motor/gross motor, cannot push/pull, cannot lift, ROM limited in [upper] body." *Id.* Where the notes require a reference to consultative/diagnostic testing, Dr. Pluskota writes, "see BW/xrays." *Id.* at p. 222. Dr. Pluskota prescribed Triamcinolone injections and Vicoden 5/500, and his notes reflect that the medication was effective but that there were problems with compliance. *Id.* at 222-23. The notes also indicate that Plaintiff should be seen every four months but he had missed previous appointments. The patient encounter notes read, "Will write letter stating unable to work." *Id.* at 224. The ALJ rejected Dr. Pluskota's findings in the January 2006 medical notes because Dr. Pluskota " does not cite to specific medical records or findings to support his opinion. A review of his progress notes offers no insights into why he feels [Plaintiff] would have such extreme limitations." ECF Dkt. #11-3, p. 98. The ALJ attributed Plaintiff's problems in large measure to Dr. Pluskota's observations that Plaintiff missed appointments and was noncompliant with medical advice. *Id.*

Plaintiff underwent x-rays of his right hand on September 26, 2006, which, according to Eugene Chlosta, M.D., revealed moderate osteoarthritis involving the distal interphalangeal joints of the thumb, index, middle, and little fingers with mild osteoarthritis involving the distal interphalangeal joints of the index, middle, and little fingers. ECF Dkt. #11-7, p. 240. That same day, Plaintiff was seen by a consultative examiner, Sam Ghoubrial, M.D. Dr. Ghoubrial concluded that Plaintiff suffered from mild to moderate degenerative osteoarthritis in his hands, and that the range of motion in his shoulders was only mildly decreased. ECF Dkt. 11-7, p. 247. Dr. Ghoubrial further opined that Plaintiff's "pinsor movements and fine coordination appear to be [within normal limits]." *Id.* W. Jerry McCloud, M.D., concluded that "from a review of the medical documentation and the CE evaluation, there is no medically determinable severe physical impairment." ECF Dkt. # 11-7, p. 249. The ALJ credited Dr. Ghoubrial's opinion that Plaintiff

---

[2]It is important to note that Plaintiff had been seen by Dr. Pluskota in September of 2005, approximately one month prior to his onset date, because he had injured his right hand. According to the patient encounter notes, Plaintiff was experiencing a "shock-like sensation" in his thumb after the injury. Dr. Pluskota diagnosed probable nerve irritation, but noted no hand, thumb weakness or atrophy, no tenderness, and normal range of motion. He prescribed moist heat and Diflunisal 500. ECF Dkt. # 11-7, p. 225.

"had no problem handling objects because he found his pinsor movements and grasp within normal limitations." ECF Dkt. #98. However, the ALJ rejected Dr. Ghoubrial's conclusion that Plaintiff had no difficulty sitting, walking, lifting, carrying, handling objects, or hearing "because evidence presented to [him] at the hearing level convinces [him] that [Plaintiff] has limitations with the other areas of functioning that are greater than those Dr. Ghoubrial assessed. ECF Dkt. # 11-3, p. 98.

On December 14, 2006, Plaintiff reported multiple joint, neck, and back pain. ECF Dkt. #11-8, p. 252. He also reported tenderness in his wrists, fingers, elbows, and swelling in his left knee. *Id.* Dr. Pluskota described Plaintiff's limitations as follows, "Pt has physical limitation due to pain, limited in lifting. ROM limits, unable to use wrenches due to pain, swelling. Lifting [less than] 25 lbs, limit standing due to pain in feet. Must limit bending. Pain affects mood, sleep." *Id.* at p. 254. The ALJ credited Dr. Pluskota's findings in the December 14, 2006 report because "it is consistent with and supported by Dr. Pluskota's treatment notes and with other evidence of record." ECF Dkt. #11-3, p. 98. The ALJ also considered Dr. Pluskota's notation regarding Plaintiff's failure to make and keep routine appointments. Id.

In a letter dated January 11, 2007, Dr. Pluskota provided the following assessment of Plaintiff's impairments:

> [Plaintiff] sustained a hand injury in September 2005. He has swelling in his hands and feet, elbow pain, pain in the hips, knees and shoulders due to arthritis. Due to above mentioned condition [Plaintiff] is unable to perform the necessary functions of his job. He is unable to use wrenches and cannot push or pull. [Plaintiff] cannot stand for long periods due to swelling in his lower extremities and numbness in feet. He is limited in his range of motion and lifting due to chronic back pain. He also has problems hearing due to tube replacement in right ear and chronic ear infections. I feel [Plaintiff] would not be able to sustain any type of employment due to his medical conditions and it is my medical opinion that [Plaintiff] is totally disabled.

ECF Dkt. #11-8, p. 263. The ALJ credited Dr. Pluskota's assessment regarding Plaintiff's inability to use wrenches, push and pull, and stand for long periods of time. ECF Dkt. #11-3, p. 98. The ALJ wrote that he had "incorporated [the foregoing portions of Dr. Pluskota's assessment] into the residual functional capacity contained [in the Decision] because they are consistent with the medical evidence of record and with his December 2006 opinion." Id. However, the ALJ rejected Dr. Pluskota's opinion that Plaintiff could not work because it involved vocational issues and was a

-7-

determination reserved for the Commissioner. Id.

On June 22, 2007, an MRI of Plaintiff's cervical spine revealed a moderate to large size right herniated nucleus pulposus at C5-C6, which produces a mild indentation on the spinal cord and also compromises the right neural foramen at C5-C6. ECF Dkt. #11-8, p. 266. It also showed moderate disc bulging at C6-C7. An MRI of the Plaintiff's lumbar spine on the same date revealed a relatively large herniation at L2-L3, moderate generalized disc bulging at L3-L4 and L5-S1, with a more advanced degenerative change at the L5-S1 intervertebral discs. *Id.* at p. 267. A nerve conduction study performed on June 12, 2007 revealed evidence of diffuse polyneuropathy in the right and left upper and lower extremities. ECF Dkt. 11-8, p. 268.

In concluding that Plaintiff could perform the full range of sedentary work, the AJL relied on Plaintiff's testimony at the hearing that he is able to mow his lawn, wash dishes, and drive a car. The ALJ wrote, "[Plaintiff] admitted that he had worked on his car [ ] but indicated he only does auto repairs in emergencies." ECF Dkt. #11-3, p. 97. Although Plaintiff did admit that he drives a car, he actually testified that he mows the lawn with a riding mower and rarely does any household chores. ECF Dkt. #11-2, p. 63. Furthermore, when he was asked what he could accomplish on a "good day," he stated that he "could maybe wash a dish or two in and within a fifteen minute span." *Id.* The ALJ cites Exhibit 12F for the proposition that Plaintiff had "worked on his car [ ] but indicated that he only does auto repairs in emergencies." ECF Dkt. #11-3, p. 97. At the hearing, Plaintiff testified that , in April of 2007, his exhaust pipe fell from his car and it was in the street so he had to wire it back up, and the rust from the pipe got in his eye. ECF Dkt. #11-2, p. 77. On a bad day, Plaintiff is irritable and lays around all day. *Id.* Plaintiff has two or three bad days a week. *Id.* at p. 77. Furthermore, Plaintiff stated that his medication gives him concentration problems, most notably that he falls asleep within five minutes of reading or watching television. *Id.* at p. 64.

According to his testimony at the hearing, Plaintiff, who was 49 years old on the day of the hearing, has pain down below his shoulder blades, and that his elbows lock up. His forearms ache, and his left arm goes numb at times. His wrists and knuckles swell and are painful. *Id.* at p. 66. He cannot make a "hard" fist, and has difficulty handling small objects with either hand. *Id.* at p. 67-68. He cannot perform a repetitive task for more than fifteen minutes without then taking a fifteen

minute break. *Id.* at 68.  He can only sit for a half hour, or stand for fifteen minutes, then he must lie down for anywhere between fifteen minutes to an hour to alleviate the pain. *Id.* at p. 70.  He can only look down for ten minutes before he must straighten his neck or move it side to side. *Id.* at 72-73.  Plaintiff did not graduate from high school and never received a GED. *Id.* at p. 57.

There is no question that the ALJ in this case carefully considered Dr. Pluskota's assessment of Plaintiff's physical impairments.  Plaintiff contends that the ALJ claimed to have adopted Dr. Pluskota's medical opinion but did not include his opinion that Plaintiff could not perform fine manipulation in the RFC.  To the contrary, the ALJ credited Dr. Pluskota's opinion that Plaintiff could no longer perform his past work.  To the extent that the ALJ rejected Dr. Pluskota's conclusion that Plaintiff could not perform any work at all, the ALJ relied upon the fact that Dr. Pluskota's conclusions regarding fine manipulation were not supported by the medical record.  The only reference to fine manipulation is in the July 2006 report.  However, as the ALJ noted in his Decision, there is no support in the record for Dr. Pluskota's conclusion.  In his January 11, 2007 letter, Dr. Pluskota writes that Plaintiff "has swelling in his hands" and "he is unable to use wrenches and cannot push or pull." ECF Dkt. #11-8, p. 263.  Although Dr. Pluskota ultimately concludes that Plaintiff "would not be able to sustain any type of employment due to his medical conditions," he does not specifically refer to any hand limitations other than the inability to use wrenches or push or pull.

With respect to Plaintiff's claims of debilitating back pain, the ALJ relied upon Plaintiff's failure to maintain a routine exam schedule and to follow medical recommendations to discredit Plaintiff's complaints.  The ALJ wrote:

> The claimant has been noncompliant with medical advice.  Dr. Pluskota reported in July 2006 that the claimant has had "multiple no call/no show(s)" (Exhibit 1F at 3).  In January 2007, Dr. Pluskota wrote the claimant "does not make routine appointments as directed and does not keep appointments" (Exhibit 5F at 4).  Despite being told he needed to quit smoking, he was still smoking two packs per day as of March 27, 2007 (Exhibit 11F at 3).
>
> Although the claimant has received medical treatment, his treatment has been fairly routine and conservative and not consistent with someone alleging disability.  Additionally, the treatment he has received has been sporadic at best.

ECF Dkt. #11-3, p. 97.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

Here, there is evidence of mild to moderate degeneration of the spine, however, that evidence alone is insufficient to demonstrate Plaintiff's inability to perform sedentary work. When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v.*

*Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ found that Plaintiff's medical condition could be expected to produce pain, but not the kind of severe pain that Plaintiff alleged. It should be noted that the ALJ did not totally reject Plaintiff's allegations of pain, but rather, he determined that Plaintiff's allegations of the intensity, duration and limiting effects of his symptoms were not substantiated by the objective medical findings or other evidence in the record. An ALJ is not required to accept a plaintiff's own testimony regarding his pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987). Here, the ALJ rejected Plaintiff claims of disabling pain based upon Plaintiff's failure to make and keep follow-up appointments. *See Strong v. Social Security Administration*, 88 Fed. Appx. 841, 846 (6th Cir.2004)("in the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.") Likewise, the ALJ relied upon Dr. Pluskota's observation in June, 2006 that the prescribed medication was effective in treating Plaintiff's medical condition, but that Plaintiff was not taking the medication as directed. Finally, the ALJ relied upon Plaintiff's testimony that he mowed his own lawn and, in an emergency situation, was able to repair his car, to conclude that his allegations of disabling pain were not credible. Again, it is important to note that the ALJ credited Plaintiff's testimony to the extent that he could not perform his past work due to hand limitations and back pain. The ALJ did not credit Plaintiff's testimony that he was incapable of performing sedentary work.

In his final argument, Plaintiff challenges the ALJ's assessment of Plaintiff's credibility. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir.1987)). Here, Plaintiff's own testimony at the hearing contradicted his claims of debilitating pain. For instance, although Plaintiff claimed that he cannot perform a job that requires him to sit for an extended period of time

or hold his head to be in the same position for an extended period of time, he also testified that he uses a riding mower and mows his own lawn. As a consequence, the undersigned finds that the ALJ's credibility determination was supported by substantial evidence.

For the foregoing reasons, the undersigned the Court AFFIRMS the Commissioner's decision and dismisses Plaintiff's complaint with prejudice.


DATE: September 9, 2011

                                        */s/George J. Limbert*
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE